UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JULIE DERMANSKY,

               *Plaintiff*,

-against-

GETTY IMAGES (US), INC. and AMERICAN
ARBITRAITON ASSOCIATION INC.,

               *Defendants*.

-------------------------------------------------------------------x

Index No.: 1:24-cv-4705

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Julie Dermansky ("Plaintiff" or "Dermansky"), by and through her undersigned attorneys, for her complaint seeking declaratory judgment and injunctive relief against Defendants Getty Images (US), Inc. ("Getty") and the American Arbitration Association Inc. ("AAA") (together, "Defendants"), alleges as follows:

## INTRODUCTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 seeking a determination that an arbitration clause in the 2017 Agreement (defined below in paragraph 30) between Plaintiff and Getty should be enforced according to its terms under the Federal Arbitration Act. (9 U.S.C. § 1 *et seq.*).

2. The 2017 Agreement's arbitration clause requires the parties to file any arbitration with a specific alternative dispute resolution provider, Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Relying on a different 2012 Agreement (defined below in paragraphs 47-48) that was expressly superseded and canceled by the 2017 Agreement; however, Getty filed an arbitration

with the AAA on April 4, 2024, citing the superseded and canceled 2012 Agreement for its AAA-venued arbitration clause.

3. The AAA referred the question of whether the 2017 Agreement superseded and canceled the 2012 Agreement, including its arbitration clause, to an "Administrative Review Panel." Rather than deciding the question put before it, however, and over Plaintiff's objection, the Administrative Review Panel did not decide whether the 2017 Agreement or the 2012 Agreement applies to the dispute between Plaintiff and Getty, but merely sent the question to the as-yet-to-be selected arbitrator, thus effectively allowing the arbitration to proceed, despite the fact that the superseding 2017 Agreement vests jurisdiction solely with JAMS. The AAA's administrative determination is in error, as the Supreme Court recently determined in *Coinbase, Inc. v. Suski et al.* that jurisdictional challenges concerning whether an arbitration clause in one agreement is superseded by the venue clause in another agreement is a matter of law for a court to decide.

4. Plaintiff therefore seeks a temporary restraining order, a preliminary injunction, and a permanent injunction against Getty and AAA, preventing each from permitting the filed arbitration in the AAA to proceed, because that venue has no jurisdiction given the plain language of the superseding 2017 agreement.

**PARTIES**

5. Since 2008, and at all relevant times, Dermansky has provided professional commercial photography and photojournalism services, specializing in matters related to the environment, social injustice, political figures, the culture of the Gulf South, and breaking or relevant news related to those topics. Dermansky's residence and principal place of business is in the New Orleans, Louisiana metropolitan area.

6. Defendant Getty Images (US), Inc. ("Getty") is a corporation organized under the laws of the state of Delaware, and has a principal place of business located at 195 Broadway, New York, NY 10007. Getty is an agent to its contributing photographers (such as Plaintiff), and licenses photographs and other content to various publishers and other users of such content.

7. Defendant American Arbitration Association ("AAA"), sued herein as a nominal party for the purpose of enforcing the requested injunction, is a private, not-for-profit organization specializing in the administration of arbitration and other alternative dispute resolution procedures. The AAA is incorporated in the State of New York, and its principal place of business is located at 120 Broadway, New York, NY 10271. The AAA provides services globally, facilitating dispute resolution in various fields, including commercial, construction, labor, and employment disputes.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and 9 U.S.C. § 5, as the matter involves the correct selection of an arbitral venue and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. This Court has personal jurisdiction over both Defendants because each maintains a principal place of business or is incorporated in New York, New York, and because the arbitration Plaintiff seeks to enjoin is venued in New York.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a).

## FACTUAL ALLEGATIONS

11. Plaintiff is a professional commercial photographer and visual content creator, who provides, among other services, journalistic documentary photography and multi-media reporting

services to clients.  Plaintiff charges and invoices these clients for the cost of her services, and further licenses her photographs for use by such clients according to limitations specified under her written and oral licensing agreements.  Plaintiff also licenses her photographs for uses in print, video, and on the Internet.

12. Plaintiff's photographs are highly valuable due to the combination of the artistic and expressive quality of her photographs, the unique or rare subject matter depicted therein, and her exclusive treatment of her photographs, which she rightfully protects.

13. Like many professional commercial photographers, Plaintiff's livelihood depends on revenue generated by licensing her original works for reproduction and public display.

**1. Dermansky's Relationship with Getty Is Governed by the 2017 Agreement, Which Expressly Supersedes and Cancels All Prior Agreements.**

14. In 2010, Dermansky entered into a written agreement with Corbis Images ("Corbis"), a photography licensing agency, pursuant to which Dermansky granted Corbis the right to act as her agent to license, on a co-exclusive basis, certain of Dermansky's photographs on a limited rights basis to Corbis' customers (the "2010 Corbis Agreement").

15. The 2010 Corbis Agreement permitted Corbis to license Dermansky's photographic works only on a "co-exclusive" basis, meaning that while Corbis was permitted to license Dermansky's works to others, she also retained the right to license her works to others.

16. Under the 2010 Corbis Agreement, Dermansky's images were primarily to be licensed for use in editorial projects on a "Limited Rights" basis, defined as "those rights licensed by Corbis . . . that specify a particular use and may limit the time, manner, and frequency of such use."

17. From 2010 through 2015 Dermansky submitted photographs and video clips to Corbis and Corbis made them available for license via Corbis's platform.

18. In early 2016, Dermansky was informed by Corbis that Corbis had been sold and that the purchaser was transferring Corbis's US licensing platform to Getty.

19. It was explained that if Getty desired to represent Dermansky's visual content in Corbis's collection, Getty would offer Dermansky an opportunity to "migrate" her content to Getty's platform, allowing Getty to license her content in a similar manner to what she granted to Corbis.

20. Shortly thereafter, on March 21, 2016, Getty invited Dermansky to migrate her photo and video content from Corbis's collection to Getty's licensing platform (the "Migration Acknowledgment," attached hereto as Ex. A).

21. Dermansky signed the Migration Acknowledgment on March 22, 2016. (Ex. A, at 2).

22. Before agreeing to the details of Getty's "migration" offer, however, Dermansky reached out to representatives at Getty for clarity regarding the manner in which her work would be licensed. Getty assured Dermansky that any photographs or video clips she had submitted to the Corbis platform before the "migration" of those images to Getty's platform would be designated as what Getty referred to as "Rights Managed" images, which was explained to her was the Getty equivalent of the "Limited Rights" grant under her 2010 agreement with Corbis.

23. Getty defines "Rights Managed" content on its licensing platform, as distinguished from "Rights Free" content.  Licenses taken under Getty's "Rights Managed" content section are limited to the specific use, medium, period of time, print run, placement, size of content, and territory selected, and any other restrictions that accompany the content on the Getty Images website.  By contrast, licenses to "Rights Free" content is perpetual, meaning there is no expiration or end date, and unlimited, meaning content can be used an unlimited number of times.

24. Getty asked Dermansky whether, once she signed the migration agreement, she would agree to convert her images from "Co-Exclusive" to "Exclusive," which was Getty's "preference" because that designation would "align with [Getty's] standard exclusive agreement." (Ex. A, at 1).

25. Had Dermansky agreed to convert her images from Co-Exclusive to Exclusive, Getty would receive a greater grant of rights than what she had granted to Corbis.

26. Dermansky declined to migrate her works to Getty on an Exclusive basis and stated she would retain the Co-Exclusive status of her images after migration to Getty. Specifically, she declined to check a box on the Migration Acknowledgment form sent to her by Getty that would have converted her works to "excusive" with Getty. Thus, her work was only migrated to Getty under a "Co-Exclusive" grant of rights.

27. When Dermansky signed the Migration Acknowledgment, Getty thus became Dermansky's co-exclusive licensing agent. Dermansky's photographs and video clips were thus migrated from Corbis to Getty, and per her instructions, were designated as "Rights Managed" editorial use only in Getty's licensing platform.

28. Getty began licensing Dermansky's "Rights Managed" works in March 2016, after Dermansky signed the Migration Acknowledgment.

29. In each instance relevant to the pending arbitration, Dermansky's photographs were listed on Getty's website as being available for licensing to Getty's customers only for "Editorial, Rights Managed" projects.

30. At the time of the Migration Acknowledgment in March 2016, Getty also asked Dermansky to sign a required Getty form of adhesion agreement referred to as the "Getty Images Contributor Agreement v.5.1 Corbis (Corbis Migration) Agreement." Dermansky had initially

overlooked Getty's request that she sign the v.5.1 Corbis Migration Agreement in March 2016, but she signed it on January 28, 2017 (the "2017 Agreement," attached hereto as Ex. B), after being told several additional times that it was required.

31.     The 2017 Agreement "applies to all Content that [Dermansky] previously submitted and, in the future, will submit, that is accepted for distribution by Getty Images ("Accepted Content")."  (Ex. B, at 1).

32.     The 2017 Agreement *twice* indicates that no other agreement relating to the Accepted Content applies: "This Agreement supersedes and cancels all previous agreements you have entered into with Getty Images related to the distribution of Accepted Content," (Ex. B, at 1), and an integration clause under the header "Entire Agreement," which states, "The Agreement supersedes and cancels any previous agreements related to the distribution of Accepted Content." (*Id.* at 4 (Section 4.1)).

33.     The 2017 Agreement requires Getty to inform Dermansky of the rights granted by a license Getty entered into on her behalf, on a "Sales Report."  (*Id.* at Section 1.3).

34.     The 2017 Agreement contains a comprehensive arbitration clause, which states, in relevant part:

> **4.4  Governing Law and Arbitration.** This Agreement will be governed in all respects by the laws of the State of New York, U.S.A., without reference to its laws relating to conflicts of law. Any disputes arising from or related to this Agreement or its enforceability, or the business relationship between the parties, shall be finally settled by binding, confidential arbitration by a single arbitrator selected **using the rules and procedures for arbitrator selection under JAMS' Expedited Procedures in its Comprehensive Arbitration Rules and Procedures ("JAMS")** or of the International Center for Dispute Resolution ("ICDR") in effect on the date of the commencement of the arbitration (the applicable rules to be at your discretion) to be held in one of the following jurisdictions (whichever is closest to you): Seattle, Washington; New York, New York; Los Angeles, California; London, England; Paris, France; Frankfurt, Germany; Tokyo, Japan; or Singapore. The arbitration proceedings shall be

>conducted in English and all documentation shall be presented and filed in English. The decision of the arbitrator shall be final and binding on the parties, and judgment may be entered on the arbitration award and enforced by any court of competent jurisdiction.

(Ex. B, at 4) (emphasis added). The 2017 Agreement also provides that the "prevailing party shall be entitled to recover its reasonable legal costs relating to that aspect of its claim or defense on which it prevails, and any opposing costs awards shall be offset." (*Id.*). It also provides that it is essentially only a one-way obligation because Getty (but not Dermansky) can go to Court instead of arbitration: "Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against you in the event that, in the opinion of Getty Images, such action is necessary or desirable." (*Id.*). It does not, however, provide that Getty can file an arbitration in the AAA.

35. Dermansky terminated the 2017 Agreement and her relationship with Getty on August 26, 2019.

2. **Getty Files an Arbitration Demand With AAA Seeking to Prevent Dermansky from Bringing Valid Copyright Infringement Claims Against Getty's Customers.**

36. Dermansky enforces her copyrights in her works, including in works that were previously licensed by Getty pursuant to the 2017 Agreement, as is her right under the Copyright Act.

37. Dermansky has issued cease and desist demand letters and, when necessary, brought suit, against several of Getty's customers (and sometimes also the third-party sub-licensees of Getty's customers) to prevent further unauthorized use and continued economic damage Dermansky suffers from loss of attribution and royalty revenue.

38. In response to Dermansky's copyright demands, some accused infringing parties have pointed to alleged "licenses" they claim to have obtained from Getty. In such cases,

Dermansky reviews her Getty Sales Reports from 2016-2019 to determine the type and length of license granted by Getty.

39. For the licenses at issue in the pending arbitration, all Dermansky's Sales Reports from Getty stated that they were for "Premium Access Time Limited" licenses, meaning they were to be used in an editorial context only.

40. Based on publicly available forms of Getty's "Premium Access Time Limited" licenses, such licenses contain the following restrictions:

   a. The rights granted are "non-sublicensable;"

   b. Uses beyond a single one-time use "requires prior written consent," and "the payment of additional license fees;"

   c. The licensee can only use the works for the duration of the license;

   d. So-called "archival rights" are limited to a "database of past articles on Licensee's Website" within the context of the original article, but after the expiration of the original term of the license, such archival rights are "without the rights to modify, alter, or manipulate," the original licensed use that was created during the term;

   e. The licensee may not use the works "in any secondary Reproductions," including not on "social networking websites;"

   f. Licensed works may not be used contrary to the "Rights and Restrictions," which are in turn defined as including restrictions "accompanying the Licensed Material on the Getty Images Website," (such as limitations to "Rights Managed Editorial" uses discussed above, and including the prohibition of advertorial and commercial uses), and restrictions about "the permitted scope of use," and the "duration of [the] license;"

      g.  Getty Licensees must credit the photographer by name, "adjacent to the Licensed Material;" and

      h.  Upon expiration of the license, "all of Licensee's licenses hereunder. . . shall immediately cease."

41.    The Getty customers who Dermansky has asserted infringement and Section 1202 claims against exceeded the scope of a "Premium Access Time Limited" Getty license by, among other things: using her photographs in advertorials or native advertising; using her photographs continuously beyond the time limitations in their licenses without a proper archive; re-using her photographs in multiple articles after the terms of the licenses expired; sublicensing or "syndicating" her photographs; allowing her works to be used on social media; and omitting her credits or metadata.

42.    But Getty's customers have claimed the licenses they received from Getty were broader than "Premium Access Time Limited" licenses, or did not include some or all of the foregoing restrictions referenced above for such licenses. In response to such claims, Dermansky has requested to see copies of the purported licenses, as the uses she wrote to the accused infringers about exceeded the scope of her understanding of a "Premium Access Time Limited" license, as Getty informed her it had granted in the "rights granted" area on her Sales Reports for the customers at issue.

43.    When the Getty customers refused to provide copies of the documents they claim supply their "license" defense to copyright infringement, Dermansky demanded that Getty provide a copy of each licensing agreement that it entered into on her behalf with its customers. Like the Getty customers, Getty refused this request, claiming the licenses it entered into on Dermansky's behalf are "trade secrets," even against her.

44. Dermansky alleged that by withholding the license agreements entered into on her behalf, Getty was violating its fiduciary duty to her. Nevertheless, she did not pursue that claim in JAMS arbitration because of the cost.

45. Despite the refusal of both the Getty customers and Getty to provide her with copies of the Getty-Customer licenses, Dermansky proceeded to assert infringement claims against a number of Getty's customers, including various Hearst entities (and Hearst's sub-licensees Yahoo! and MSN). (*See*, *e.g.*, *Dermansky v. The Hearst Corp., et al.*, Case No. 1:24-cv-1272 (S.D.N.Y.) (First Amended Complaint, Dkt. No. 50, *et seq.*)).

46. On April 4, 2024, without any advance notice to Dermansky, Getty filed a Demand for Arbitration in the AAA under its Commercial Arbitration Rules (the "Demand," attached hereto as Ex. C).

47. The Demand falsely asserts that the AAA has jurisdiction based on a different but superseded agreement between Dermansky and Getty, which never applied to the content she agreed to "migrate" from Corbis to Getty, dated April 1, 2012 (the "2012 Agreement").

48. The 2012 Agreement is annexed as Exhibit B to the Demand. (Ex. C, at 50-55). As explained by Dermansky in her Answer to the Arbitration Demand (attached hereto as Ex. D, at 1-3, 5-6, 8, 10, and 13), in her reply papers in support of her challenge to AAA's jurisdiction (attached hereto as Ex. E, at 1-3, 5-6, and 8), and in her Declaration filed in support of her jurisdictional challenge to the AAA's jurisdiction (attached hereto, as Ex. F, at 1-4 and 7-9), the 2012 Agreement related to some video clips that she never submitted, and was thus dormant by the time she signed the Corbis Migration Acknowledgment and the 2017 Agreement.

49. The 2012 Agreement, like the superseding 2017 Agreement, also has an arbitration clause that provides:

> The Agreement will be construed and enforced in accordance with the laws of the State of New York, excluding its laws relating to conflict of laws. Any dispute arising out of or in connection with the Agreement shall be settled before a single arbitrator under the **Commercial Rules of the American Arbitration Association ("AAA")** or International Chamber of Commerce ("ICC") in: Seattle, Washington, U.S.A.; New York, New York, U.S.A; London, England; Paris, France; Frankfurt a.m., Germany or Tokyo, Japan. You may select the applicable rules and the venue from the foregoing. The substantially prevailing Party will be entitled to recover its reasonable legal costs. If both Parties prevail on particular claims, or defenses of a claim, then each Party will be entitled to recover its reasonable legal costs for those claims it successfully asserts or defends, and the awards will be offset.

(Ex. C, at Ex. B, § 4.4) (emphasis added).

50. The Demand does not acknowledge the 2017 Agreement, which expressly superseded and cancelled all prior agreements between Dermansky and Getty, and, as set forth above, requires any domestic U.S. arbitration to be held under the auspices of JAMS as the venue, according to its expedited rules.

### 3. AAA Issues an Administrative Ruling that Allows Getty's Wrongly-Filed Demand to Proceed to an Arbitrator.

51. In response to Getty's April 4 arbitration Demand, Dermansky objected to the AAA's jurisdiction, citing the existence of the superseding 2017 Agreement. (*See* Exs. D-F).

52. On June 5, 2024, the AAA's Administrative Review Panel evaluated the parties' contentions, and determined only that the AAA's filing requirements were met (attached hereto as Ex. G). In its letter, the AAA stated that, "in the absence of an agreement by the parties **or a court order staying the case**, the AAA will proceed with the administration of the arbitration." (*Id.*) (emphasis added).

53. The AAA avers that under its rules, the "arbitrators have the power to determine the extent of their own jurisdiction, including any objections with respect to the existence, scope

or validity of the arbitration agreement and the existence or validity of a contract of which an arbitration clause forms a part."  (Ex. F).

54. The AAA is wrong because Dermansky did not agree that AAA can adjudicate this dispute (or to AAA's rules governing the issue) since the 2017 Agreement superseded and canceled the 2012 Agreement, and the 2017 Agreement does not give AAA jurisdiction.

55. Getty apparently contends that while it entered into the 2017 Agreement, it only did so "by accident."  Dermansky avers that it was intentional, not an accident.

56. In this circumstance, the Supreme Court recently confirmed that the question of whether an agreement to arbitrate is superseded is a question for the court, not the arbitration tribunal.  *See Coinbase, Inc. v. Suski et al.*, 602 U.S. ___, 2024 U.S. LEXIS 2263, 2024 WL 2333424 (May 23, 2024) (holding that in a situation where the parties have agreed to two contracts and the issue is whether one supersedes the other with respect to jurisdictional challenges to arbitral venue, the decision as to whether one agreement supersedes the other is for a court, not the arbitrator).

57. Unless this Court issues an order preventing Defendants from allowing the arbitration to proceed in the AAA, Dermansky will be irreparably harmed.

58. Permitting Getty to continue its arbitration in the AAA forces Dermansky to pursue any counterclaims in the AAA under the superseded 2012 Agreement at almost four times the cost of proceeding versus those same counterclaims proceeding in JAMS under the superseding 2017 Agreement.  Cost is also a significant consideration because JAMS has its own facility for conducting the arbitration whereas AAA requires the parties to secure a venue for the proceedings at cost.

59. Once the arbitration in the AAA is underway, Dermansky could lose her right to a JAMS arbitrator under the 2017 Agreement.  Pursuing this parallel track is also likely to lead to competing proceedings and conflicting awards over the exact same subject matter if, as is likely, JAMS agrees that it has jurisdiction over an arbitration sounding in the 2017 Agreement, while AAA permits Getty's arbitration to proceed.

60. In addition to the dispute over the jurisdiction of AAA to keep this proceeding pending, Getty's Demand far exceeds the scope of the arbitration provision in either the 2017 Agreement or the 2012 Agreement.

61. Getty apparently contends that the arbitrator can adjudicate infringement claims by Getty's customers within the context of the arbitration even though Getty's customers are not parties to the arbitration and have no agreement with Dermansky.  Getty is wrong.  Dermansky never agreed to arbitrate her claims for copyright infringement or Section 1202 violations against third-parties.

62. Accordingly, Dermansky seeks relief in the form of an order preventing Getty from pursuing a declaratory judgment that its customers do not infringe Dermansky's copyrights or violate her Section 1202 rights in any arbitration.

63. Dermansky has no adequate remedy at law.

64. Balance of the hardships weighs in favor of Dermansky who, unlike Defendant Getty, is not a multi-billion-dollar corporation capable of absorbing the financial costs of an arbitration of indefinite scope and that is more expensive than the arbitration tribunal she agreed upon.

65. Arbitrations offered by the AAA and JAMS differ significantly in their procedural rules, fee structures, and panel selection processes.  The AAA typically employs a more structured

and formal approach, adhering to a set of comprehensive arbitration rules that cater to various types of disputes. AAA also keeps its list of arbitrators secret and only provides resumes to the parties based on its own selection criteria. AAA's fee structure often includes an initial filing fee, a case management fee, and arbitrator fees, which can vary depending on the complexity and value of the dispute. In contrast, JAMS, which prides itself on providing a more flexible and customizable arbitration experience, allows parties greater latitude in tailoring the arbitration process to their specific needs. JAMS' arbitrator list is public, as are their hourly fees. Additionally, JAMS offers a streamlined set of rules designed to expedite the resolution process, which can be particularly advantageous in high-stakes or time-sensitive cases.

66. Moreover, the public interest is served by having disputes relating to the nature and extent of unauthorized uses of photographers' works resolved in public, not in the confidential, private space of an arbitration.

## COUNT 1
## DECLARATORY JUDGMENT

67. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth herein.

68. An actual, substantial, and justiciable controversy has arisen and now exists between Plaintiff and Getty concerning their respective rights and obligations under the arbitration clause of the 2017 Agreement and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

69. Plaintiff seeks a declaration from this Court that: (a) the 2017 Agreement superseded and cancelled the 2012 Agreement, and therefore, the 2012 Agreement has no legal effect and cannot confer jurisdiction over arbitrations to the AAA; (b) the 2017 Agreement's arbitration clause must be enforced according to its terms; (c) Defendant is not entitled to pursue any arbitration proceeding inconsistent with the requirements of the 2017 Agreement; (d) that the scope of the arbitration shall be limited to contractual or other disputes between Dermansky and

Getty, but not include infringement and Section 1202 claims by Dermansky against Getty's customers; and (e) that because the AAA has no jurisdiction, Dermansky is the prevailing party in that proceeding and it entitled to her attorneys' fees and costs.

## COUNT 2
## INJUNCTION

70. Plaintiff repeats and realleges paragraphs 1 through 69 as if fully set forth herein.

71. Plaintiff seeks to enjoin Getty Images from proceeding with the arbitration it filed in the AAA.

72. Plaintiff will suffer irreparable harm if Getty Images is allowed to proceed with the non-compliant arbitration proceeding, as Plaintiff will be forced to participate in an arbitration that does not meet the agreed-upon terms and conditions of what she agreed to, potentially leading to an unfair and unjust resolution of the dispute.

73. Plaintiff has no adequate remedy at law.

74. The balance of hardships weighs in favor of Plaintiff, as Getty will not be prejudiced by being required to arbitrate the dispute in accordance with the terms of the 2017 Agreement.

75. Granting injunctive relief is in the public interest, as it upholds the sanctity of contracts and ensures that arbitration agreements are enforced as written.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and that the Court grant the following relief:

A. A declaratory judgment that the 2017 Agreement superseded and cancelled the 2012 Agreement, and that as a result, the arbitration clause in the 2017 Agreement must be enforced according to its terms under the Federal Arbitration Act, 9 U.S.C. § 1, 5 *et seq*.;

B. An injunction enjoining Getty from pursuing or proceeding with any arbitration that does not comply with the requirements of the 2017 Agreement's arbitration clause, including the pending AAA arbitration;

C. An Order requiring AAA to comply with the injunction;

D. An injunction preventing any arbitration from exceeding the scope of any dispute between Dermansky and Getty, including barring any attempt to adjudicate infringement claims by Dermansky against Getty's customers with whom she has no agreement to arbitrate;

E. An Order awarding Plaintiff her costs and reasonable attorneys' fees incurred in bringing this action as permitted by both the 2017 Agreement and the 2012 Agreement; and

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury as to all claims so triable.

Dated: June 20, 2024                    Respectfully submitted,

**LEICHTMAN LAW PLLC**

By: *David Leichtman*
David Leichtman (DL 7233)
Shane Wax (SW 3247)
Devin L. Newman (DN 8163)
Emma J. Hoffmann (EH 9673)

185 Madison Avenue, 15th Floor
New York, NY 10016
Tel: 212.419.5210

dleichtman@leichtmanlaw.com
swax@leichtmanlaw.com
dnewman@leichtmanlaw.com
ehoffmann@leichtmanlaw.com

*Counsel for Plaintiff Julie Dermansky*